**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CHRISTOPHER KINLAW,               :
                                  :    Civil Action No. 10-1751 (SRC)
              Plaintiff,          :
                                  :
         v.                       :    **OPINION**
                                  :
EDWARD ROCHFORD, et al.,          :
              Defendants.         :

**APPEARANCES:**

Plaintiff <u>pro se</u>
Christopher Kinlaw, Sr.
41995
Morris County Correctional Facility
43 John Street
Morristown, NJ 07960

**CHESLER**, District Judge

Plaintiff Christopher Kinlaw, Sr., a pretrial detainee confined at Morris County Correctional Facility, seeks to bring this action <u>in forma pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges two separate, unrelated claims in his Complaint.  First, he states an apparent medical claim, alleging that Morris County Correctional Facility housed inmates infected with the disease MRSA with non-MRSA patients.  He alleges that it was a violation for inmates with contagious or communicable diseases to be incarcerated along with non-infected inmates. Plaintiff does not allege MRSA infection.

Second, Plaintiff alleges his right of access to the courts is being denied because the Morris County Correctional Facility does not provide an adequate law library or adequate assistance from persons trained in the law.  Plaintiff does not allege specific facts regarding denial of access to the courts.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C.

§ 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a <u>pro</u> <u>se</u> complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. <u>Deutsch v. United States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must plead facts sufficient at least to "suggest" a basis for liability. <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 n.12 (3d Cir. 2004). "Specific facts are not necessary;

the statement need only 'give the defendant fair notice of what

the ... claim is and the grounds upon which it rests.'" <u>Erickson</u>

<u>v. Pardus</u>, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual
> allegations, a plaintiff's obligation to provide the
> "grounds" of his "entitle[ment] to relief" requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will
> not do, <u>see</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106
> S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to
> dismiss, courts "are not bound to accept as true a
> legal conclusion couched as a factual allegation").
> Factual allegations must be enough to raise a right to
> relief above the speculative level ... .

<u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007)

(citations omitted).

The Supreme Court has demonstrated the application of these

general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1
> [conspiracy] claim, we hold that stating such a claim
> requires a complaint with enough factual matter (taken
> as true) to suggest that an agreement was made. Asking
> for plausible grounds to infer an agreement does not
> impose a probability requirement at the pleading stage;
> it simply calls for enough fact to raise a reasonable
> expectation that discovery will reveal evidence of
> illegal agreement. And, of course, a well-pleaded
> complaint may proceed even if it strikes a savvy judge
> that actual proof of those facts is improbable, and
> "that a recovery is very remote and unlikely." ...   It
> makes sense to say, therefore, that an allegation of
> parallel conduct and a bare assertion of conspiracy
> will not suffice. Without more, parallel conduct does
> not suggest conspiracy, and a conclusory allegation of
> agreement at some unidentified point does not supply
> facts adequate to show illegality. Hence, when
> allegations of parallel conduct are set out in order to
> make a § 1 claim, they must be placed in a context that
> raises a suggestion of a preceding agreement, not

4

> merely parallel conduct that could just as well be
> independent action.
>
> The need at the pleading stage for allegations
> plausibly suggesting (not merely consistent with)
> agreement reflects the threshold requirement of Rule
> 8(a)(2) that the "plain statement" possess enough heft
> to "sho[w] that the pleader is entitled to relief."  A
> statement of parallel conduct, even conduct consciously
> undertaken, needs some setting suggesting the agreement
> necessary to make out a § 1 claim; without that further
> circumstance pointing toward a meeting of the minds, an
> account of a defendant's commercial efforts stays in
> neutral territory. ...

Twombly, 127 S.Ct. at 1965-66 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the
context of a § 1983 civil rights action, that the Twombly
pleading standard applies outside the § 1 antitrust context in
which it was decided.  See Phillips v. County of Allegheny, 515
F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read
Twombly so narrowly as to limit its holding on plausibility to
the antitrust context").

> Context matters in notice pleading.  Fair notice under
> Rule 8(a)(2) depends on the type of case -- some
> complaints will require at least some factual
> allegations to make out a "showing that the pleader is
> entitled to relief, in order to give the defendant fair
> notice of what the ... claim is and the grounds upon
> which it rests."  Indeed, taking Twombly and the
> Court's contemporaneous opinion in Erickson v. Pardus,
> 127 S.Ct. 2197 (2007), together, we understand the
> Court to instruct that a situation may arise where, at
> some point, the factual detail in a complaint is so
> undeveloped that it does not provide a defendant the
> type of notice of claim which is contemplated by
> Rule 8.  Put another way, in light of Twombly, Rule
> 8(a)(2) requires a "showing" rather than a blanket
> assertion of an entitlement to relief.  We caution that
> without some factual allegation in the complaint, a

5

> claimant cannot satisfy the requirement that he or she
> provide not only "fair notice," but also the "grounds"
> on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of any civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

> Therefore, after Iqbal, when presented with a
> motion to dismiss for failure to state a claim,
> district courts should conduct a two-part analysis.
> First, the factual and legal elements of a claim should
> be separated. The District Court must accept all of
> the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions. Second, a District
> Court must then determine whether the facts alleged in
> the complaint are sufficient to show that the plaintiff
> has a "plausible claim for relief." In other words, a
> complaint must do more than allege the plaintiff's
> entitlement to relief. A complaint has to "show" such
> an entitlement with its facts. See Phillips, 515 F.3d
> at 234-35. As the Supreme Court instructed in Iqbal,
> "[w]here the well-pleaded facts do not permit the court
> to infer more than the mere possibility of misconduct,

6

the complaint has alleged-but it has not
'show[n]'-'that the pleader is entitled to relief.'"
This "plausibility" determination will be "a
context-specific task that requires the reviewing court
to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)

(citations omitted).

Rule 10(b) of the Federal Rules of Civil Procedure provides:

A party must state its claims ... in numbered
paragraphs, each limited as far as practicable to a
single set of circumstances.  ...  If doing so would
promote clarity, each claim founded on a separate
transaction or occurrence ... must be stated in a
separate count or defense.

Rule 18(a) controls the joinder of claims.  In general, "[a]

party asserting a claim ... may join as independent or

alternative claims, as many claims as it has against an opposing

party."

Rule 20(a)(2) controls the permissive joinder of defendants

in pro se prisoner actions as well as other civil actions.

Persons ... may be joined in one action as defendants
if:
    (A) any right to relief is asserted against them
jointly, severally, or in the alternative with respect
to or arising out of the same transaction, occurrence,
or series of transactions or occurrences; and
    (B) any question of law or fact common to all
defendants will arise in the action.

(emphasis added).  See, e.g., Pruden v. SCI Camp Hill, 252

Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th

Cir. 2007).

7

In actions involving multiple claims and multiple defendants, Rule 20 operates independently of Rule 18.

> Despite the broad language of rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all. If the requirements for joinder of parties have been satisfied, however, Rule 18 may be invoked independently to permit plaintiff to join as many other claims as plaintiff has against the multiple defendants or any combination of them, even though the additional claims do not involve common questions of law or fact and arise from unrelated transactions.

7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure, § 1655 (3d ed. 2009).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected,

8

> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must

allege, first, the violation of a right secured by the

Constitution or laws of the United States and, second, that the

alleged deprivation was committed or caused by a person acting

under color of state law.  West v. Atkins, 487 U.S. 42, 48

(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir.

1994).

Local government units and supervisors are not liable under

§ 1983 solely on a theory of respondeat superior.  See City of

Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v.

New York City Department of Social Services, 436 U.S. 658, 690-

91, 694 (1978) (municipal liability attaches only "when execution

of a government's policy or custom, whether made by its lawmakers

or by those whose edicts or acts may fairly be said to represent

official policy, inflicts the injury" complained of); Natale v.

Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d

Cir. 2003).  "A defendant in a civil rights action must have

personal involvement in the alleged wrongs, liability cannot be

predicated solely on the operation of respondeat superior.

Personal involvement can be shown through allegations of personal

direction or of actual knowledge and acquiescence."  Rode v.

9

Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations
omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286,
1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-
91 (3d Cir. 1995).

     To establish municipal liability under § 1983, "a plaintiff
must show that an official who has the power to make policy is
responsible for either the affirmative proclamation of a policy
or acquiescence in a well-settled custom." Bielevicz v. Dubinon,
915 F.2d 845, 850 (3d Cir. 1990), quoted in Blanche Rd. Corp. v.
Bensalem Twp., 57 F.3d 253, 269 n.16 (3d Cir.), cert. denied, 516
U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v.
Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000).  A plaintiff must
demonstrate that, through its deliberate conduct, the
municipality was the moving force behind the plaintiff's injury.
Monell, 436 U.S. at 689.

> A policy is made "when a decisionmaker possess[ing]
> final authority to establish municipal policy with
> respect to the action issues a final proclamation,
> policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212
> (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati,
> 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452
> (1986) (plurality opinion)).  A custom is an act "that
> has not been formally approved by an appropriate
> decisionmaker," but that is "so widespread as to have
> the force of law."  [Bd. of County Comm'rs of Bryan
> County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997).]
>
>      There are three situations where acts of a
> government employee may be deemed to be the result of a
> policy or custom of the governmental entity for whom
> the employee works, thereby rendering the entity liable
> under § 1983.  The first is where "the appropriate
> officer or entity promulgates a generally applicable

statement of policy and the subsequent act complained
of is simply an implementation of that policy." The
second occurs where "no rule has been announced as
policy but federal law has been violated by an act of
the policymaker itself." Finally, a policy or custom
may also exist where "the policymaker has failed to act
affirmatively at all, [though] the need to take some
action to control the agents of the government 'is so
obvious, and the inadequacy of existing practice so
likely to result in the violation of constitutional
rights, that the policymaker can reasonably be said to
have been deliberately indifferent to the need.'"

Natale, 318 F.3d at 584 (footnote and citations omitted).

Finally, a § 1983 action brought against a person in his or

her official capacity "generally represent[s] only another way of

pleading an action against an entity of which an officer is an

agent." Monell, 436 U.S. at 690 n.55. "[I]n an official-

capacity action, ... a governmental entity is liable under § 1983

only when the entity itself is a 'moving force' behind the

deprivation; thus, in an official capacity suit the entity's

'policy or custom' must have played a part in the violation of

federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985)

(internal quotation marks and citations omitted).

## IV.  ANALYSIS

Pretrial detainees and convicted but unsentenced prisoners

are protected by the Due Process Clause of the Fourteenth

Amendment and convicted prisoners are protected by the Eighth

Amendment. See Bell v. Wolfish, 441 U.S. 520, 535, n.16, 545

(1979); City of Revere v. Massachusetts General Hospital, 463

U.S. 239, 244 (1983); Hubbard v. Taylor, 399 F.3d 150 (3d Cir.

11

2005); <u>Natale v. Camden County Correctional Facility</u>, 318 F.3d

575, 581 (3d Cir. 2003); <u>Fuentes v. Wagner</u>, 206 F.3d 335, 341 n.9

(3d Cir. 2000); <u>Monmouth County Correctional Institutional

Inmates v. Lanzaro</u>, 834 F.2d 326, 346 n.31 (3d Cir. 1987), <u>cert.

denied</u>, 486 U.S. 1006 (1988).

Analysis of whether such a detainee or unsentenced prisoner

has been deprived of liberty without due process is governed by

the standards set out by the Supreme Court in <u>Bell v. Wolfish</u>,

441 U.S. 520 (1979).  <u>Hubbard</u>, 399 F.3d at 157-60, 164-67;

<u>Fuentes</u>, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or
> restrictions of pretrial detention that implicate only
> the protection against deprivation of liberty without
> due process of law, we think that the proper inquiry is
> whether those conditions amount to punishment of the
> detainee.  For under the Due Process Clause, a detainee
> may not be punished prior to an adjudication of guilt
> in accordance with due process of law. ...
>
> Not every disability imposed during pretrial detention
> amounts to "punishment" in the constitutional sense,
> however.  Once the government has exercised its
> conceded authority to detain a person pending trial, it
> obviously is entitled to employ devices that are
> calculated to effectuate this detention. ...
>
> A court must decide whether the disability is imposed
> for the purpose of punishment or whether it is but an
> incident of some other legitimate governmental purpose.
> Absent a showing of an expressed intent to punish on
> the part of detention facility officials, that
> determination generally will turn on "whether an
> alternative purpose to which [the restriction] may
> rationally be connected is assignable for it, and
> whether it appears excessive in relation to the
> alternative purpose assigned [to it]."  Thus, if a
> particular condition or restriction of pretrial
> detention is reasonably related to a legitimate

12

> governmental objective, it does not, without more,
> amount to "punishment." Conversely, if a restriction
> or condition is not reasonably related to a legitimate
> goal--if it is arbitrary or purposeless--a court
> permissibly may infer that the purpose of the
> governmental action is punishment that may not
> constitutionally be inflicted upon detainees <u>qua</u>
> detainees.  ...

441 U.S. at 535-39 (citations omitted).  The Court further

explained that the government has legitimate interests that stem

from its need to maintain security and order at the detention

facility.  "Restraints that are reasonably related to the

institution's interest in maintaining jail security do not,

without more, constitute unconstitutional punishment, even if

they are discomforting and are restrictions that the detainee

would not have experienced had he been released while awaiting

trial."  441 U.S. at 540.  Retribution and deterrence, however,

are not legitimate nonpunitive governmental objectives.  441 U.S.

at 539 n.20.  Nor are grossly exaggerated responses to genuine

security considerations.  <u>Id.</u> at 539 n.20, 561-62.

The Eighth Amendment to the United States Constitution,

applicable to the individual states through the Fourteenth

Amendment, prohibits the states from inflicting "cruel and

unusual punishments" on those convicted of crimes.  <u>Rhodes v.

Chapman</u>, 452 U.S. 337, 344-46 (1981).

A.    Alleged MRSA exposure

To the extent that the alleged exposure to MRSA can be construed as a denial of medical care claim, Plaintiff has failed to state a claim.

The proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  Id. at 106.

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss.  Monmouth

14

County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F.Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F.Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and

15

not an Eighth Amendment violation.   Estelle, 429 U.S. at 105-06;
White, 897 F.2d at 110.

    "Where prison authorities deny reasonable requests for
medical treatment, however, and such denial exposes the inmate
'to undue suffering or the threat of tangible residual injury,'
deliberate indifference is manifest.   Similarly, where 'knowledge
of the need for medical care [is accompanied by the] ...
intentional refusal to provide that care,' the deliberate
indifference standard has been met.   ...   Finally, deliberate
indifference is demonstrated '[w]hen ... prison authorities
prevent an inmate from receiving recommended treatment for
serious medical needs or deny access to a physician capable of
evaluating the need for such treatment."   Monmouth County Corr.
Inst. Inmates v. Lanzaro, 834 F.2d at 346 (citations omitted).
"Short of absolute denial, 'if necessary medical treatment [i]s
... delayed for non-medical reasons, a case of deliberate
indifference has been made out."   Id. (citations omitted).
"Deliberate indifference is also evident where prison officials
erect arbitrary and burdensome procedures that 'result[] in
interminable delays and outright denials of medical care to
suffering inmates.'"   Id. at 347 (citation omitted).   Compare
Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (summary
judgment properly granted to prison warden and state commissioner
of corrections, the only allegation against whom was that they

failed to respond to letters from prisoner complaining of prison
doctor's treatment decisions) with <u>Sprull v. Gillis</u>, 372 F.3d
218, 236 (3d Cir. 2004) (a non-physician supervisor may be liable
under § 1983 if he knew or had reason to know of inadequate
medical care).

Here, Plaintiff has not established any serious medical need
that requires treatment, and furthermore has not established any
deliberate indifference on the part of Defendants related to any
serious medical need that has gone untreated. In fact, Plaintiff
has not established any damages whatsoever related to this claim.

In the alternate, construing this claim as a conditions of
confinement claim, Plaintiffs claims also fail.

The proscription against cruel and unusual punishments is
violated by the "unnecessary and wanton infliction of pain
contrary to contemporary standards of decency." <u>Helling v.
McKinney</u>, 509 U.S. 25, 32 (1993). It is well settled that "the
treatment a prisoner receives in prison and the conditions under
which he is confined are subject to scrutiny under the Eighth
Amendment." <u>Id.</u> at 31.

To state a claim under the Eighth Amendment, an inmate must
allege both an objective and a subjective component. <u>Wilson v.
Seiter</u>, 501 U.S. 294, 298 (1991). The objective component
mandates that "only those deprivations denying 'the minimal
civilized measure of life's necessities' ... are sufficiently

17

grave to form the basis of an Eighth Amendment violation."
Helling v. McKinney, 509 U.S. at 32 (quoting Rhodes, 452 U.S. at
346).  This component requires that the deprivation sustained by
a prisoner be sufficiently serious, for only "extreme
deprivations" are sufficient to make out an Eighth Amendment
claim.  Hudson v. McMillian, 503 U.S. 1, 9 (1992).

The subjective component requires that the state actor have
acted with "deliberate indifference," a state of mind equivalent
to a reckless disregard of a known risk of harm.  See Farmer v.
Brennan, 511 U.S. 825, 835 (1994); Wilson, 501 U.S. at 303.

A plaintiff may satisfy the objective component of a
conditions-of-confinement claim if he can show that the
conditions alleged, either alone or in combination, deprive him
of "the minimal civilized measure of life's necessities," such as
adequate food, clothing, shelter, sanitation, medical care, and
personal safety.  Rhodes, 452 U.S. at 347-48; Young v. Quinlan,
960 F.2d 351, 364 (3d Cir. 1992).  However, while the Eighth
Amendment directs that convicted prisoners not be subjected to
cruel and unusual punishment, "the Constitution does not mandate
comfortable prisons."  Rhodes, 452 U.S. at 349.  To the extent
that certain conditions are only "restrictive" or "harsh," they
are merely part of the penalty that criminal offenders pay for
their offenses against society.  Id. at 347.  An inmate may
fulfill the subjective element of such a claim by demonstrating

18

that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." Ingalls v. Florio, 968 F.Supp. 193, 198 (D.N.J. 1997).

Plaintiff does not allege an extreme deprivation nor does he establish that prison officials acted with deliberate indifference.  The limited allegations provided by Plaintiff in his Complaint fail to state a claim for a constitutional deprivation.  Accordingly, this claim will be dismissed with prejudice.

B.    Access to Courts Claim

Plaintiff claims that he was denied access to the courts because allegedly Morris County Correctional Facility does not have an adequate law library.

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances. Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983).  In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights. Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).  See also

Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988)
(chronicling various constitutional sources of the right of
access to the courts).

    In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme
Court held that "the fundamental constitutional right of access
to the courts requires prison authorities to assist inmates in
the preparation and filing of meaningful legal papers by
providing prisoners with adequate law libraries or adequate
assistance from persons trained in the law."  The right of access
to the courts is not, however, unlimited.  "The tools [that
Bounds] requires to be provided are those that the inmates need
in order to attack their sentences, directly or collaterally, and
in order to challenge the conditions of their confinement.
Impairment of any other litigating capacity is simply one of the
incidental (and perfectly constitutional) consequences of
conviction and incarceration."  Lewis v. Casey, 518 U.S. 343, 355
(1996) (emphasis in original).

    There is no "abstract, freestanding right to a law library
or legal assistance, [and] an inmate cannot establish relevant
actual injury simply by establishing that his prison's law
library or legal assistance program is subpar in some theoretical
sense.  ...  [T]he inmate therefore must go one step further and
demonstrate that the alleged shortcomings in the library or legal
assistance program hindered his efforts to pursue a [non-

                                20

frivolous] legal claim.  He might show, for example, that a
complaint he prepared was dismissed for failure to satisfy some
technical requirement which, because of deficiencies in the
prison's legal assistance facilities, he could not have known.
Or that he had suffered arguably actionable harm that he wished
to bring before the courts, but was so stymied by inadequacies of
the law library that he was unable to file even a complaint."
Lewis, 518 U.S. at 351.

     In describing the scope of services which must be provided
by the state to indigent prisoners, the Supreme Court has stated,
"[i]t is indisputable that indigent inmates must be provided at
state expense with paper and pen to draft legal documents, with
notarial services to authenticate them, and with stamps to mail
them.  ...  This is not to say that economic factors may not be
considered, for example, in choosing the methods used to provide
meaningful access.  But the cost of protecting a constitutional
right cannot justify its total denial."  Bounds, 430 U.S. at 824-
25, clarified on other grounds, Lewis v. Casey, 518 U.S. 343.
Thus, "there is no First Amendment right to subsidized mail or
photocopying.  [Instead], the inmates must point to evidence of
actual or imminent interference with access to the courts."
Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997).

     Moreover, a prisoner alleging a violation of his right of
access must show that prison officials caused him past or

imminent "actual injury."  See Lewis, 518 U.S. at 348-55 and n.3 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).

Here, Plaintiff has not alleged the "actual injury" required to sustain such a claim. Plaintiff does not have an abstract right to access to a law library and has failed to allege any facts indicating that his lack of access to a law library has caused him actual injury with respect to any of the narrow class of claims protected by the constitutional right of access to courts.  Accordingly, since Plaintiff has not alleged that he was thwarted in pursuing a non-frivolous case, he has failed to state a claim for a constitutional violation based upon denial of access to the courts and this claim will be dismissed without prejudice.

## V.   CONCLUSION

For the reasons set forth above, the Complaint will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim.  An appropriate order follows.

Stanley R. Chesler
United States District Judge

Dated:

22